**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| OPS ACCOUNTING, INC. | ) | Case No. 21-00001 |
| | ) | |
| Debtor. | ) | Hon. Carol A. Doyle |

**SECOND AMENDED PLAN OF REORGANIZATION DATED MAY 6, 2021
FILED BY OPS ACCOUNTING, INC.**

This Plan of Reorganization (the "Plan") under Chapter 11 of the Title 11 of the United States Code ("Bankruptcy Code") proposes to pay creditors of OPS ACCOUNTING, INC. (the "Debtor") from future revenues generated by the Debtor's business. The Debtor is a Sub Chapter V Small Business Debtor, and this Plan is governed by Sub Chapter V of Chapter 11 of the U.S. Bankruptcy Code.

Generally, the Plan provides that all administrative creditors will be paid in full on the Effective Date of the Plan (which is 30 days after the Order confirming the Plan is a final Order) unless otherwise agreed. Priority creditors will receive 100% of their allowed claims over the period of the Plan term (5 years) ("Plan Term"). First Home Bank, the secured creditor, will receive payment in full on the value of its collateral (approximately $12,000). Unsecured Creditors, including the deficiency claim owed to First Home Bank, will receive a pro rata share of the Unsecured Creditor Payment ($20,000 in the aggregate) over a period of 4 years commencing 1 year after the Effective Date, which shall equal approximately 7-8% distribution on their claims. Claims of insiders, if any, will be subordinated and will not receive a distribution unless all other classes of creditors receive payment in full. Equity security holders will not receive a distribution.

All creditors and equity security holders should review this Plan in its entirety. **Your rights may be affected. You should read these papers carefully and discuss with your attorney. A Ballot Form is attached hereto as Exhibit A.**

**Exhibits to this Plan include:**

A. Ballot
B. Liquidation Analysis
C. Projections
D. Summary of Monthly Operating Reports
E. List of Assumed Contracts

## ARTICLE I
### *Classification of Claims and Interests*

1.01   Class 1     Secured Claim of First Home Bank.

1.02   Class 2     General Unsecured Claims: Allowed claims of creditors which are unsecured.

1.03   Class 3     Insider Claims: Allowed claims of insiders.

1.04   Class 4     Equity Interests in the Debtor.

## ARTICLE II
### *Treatment of Administrative Expense Claims*
### *Priority Tax Claims and U.S. Trustee Fees*

2.01   Unclassified Claims.  Under §1123(a)(1) of the Bankruptcy Code, administrative expense claims and priority tax claims are not in classes.

2.02   Administrative Expense Claims.

   a. *Professional Fees.*  Each holder of an administrative expense claim allowed under §503 of the Bankruptcy Code will be paid in full on the Effective Date of this Plan (as defined in Section 7.01), in cash, or upon such other terms as may be agreed upon by the holder of the claim and the Debtor.  For fees approved after the Effective Date and before entry of a final decree, payment will be made on the 15th day after entry of an order approving fees.

   b. *United States Trustee Fees.*  This case is a Sub Chapter V Chapter 11 case.  As such, no U.S. Trustee fees are required to be paid under 28 U.S.C. §1930(a)(6).

   c. *Sub Chapter V Trustee Fees.*  All fees required to be paid to the appointed Sub Chapter V Trustee pursuant to Court order shall be paid in full on the Effective Date in cash.  For fees approved after the Effective Date and before entry of a final decree, payment will be made on the 15th day after entry of an Order approving fees.

2.03   Priority Tax Claims.  Each holder a priority tax claim will be paid in full in equal monthly payments commencing on or before the Effective Date and paid in full on or before the 5th anniversary of the Petition Date, plus interest at a rate of 3%.  At the Debtor's election, priority tax claims can be pre-paid at any time without penalty.

## ARTICLE III
### *Treatment of Claims and Interests Under the Plan*

Claims and interests shall be treated as follows under this Plan:

### 3.01    Class 1 – Secured Claims of First Home Bank

As of the date of this Plan, First Home Bank has not yet filed a proof of claim in this case. First Home Bank made two loans to the Debtor under the U.S. Small Business Administration ("SBA") program as follows: (a) $75,000 was loaned to the Debtor pursuant to promissory note No. 8825445006 dated September 26, 2015; and $200,000 was loaned to the Debtor pursuant to promissory note No. 3600777010 dated March 20, 2019 (collectively, the "SBA Loans"). The SBA Loans are secured by all the assets of the Debtor pursuant to UCC Financing Statements filed with the Illinois Secretary of State on September 14, 2016 (File Number 21711772) and March 14, 2019 (File Number 24217094). Pursuant to the Debtor's schedules, First Home Bank is owed approximately $227,988 collectively, on the two SBA Loans.

As of the Petition Date of January 1, 2021, the Debtor's assets had a value of $10,000, which included all cash and accounts receivable and office furniture. The Debtor proposes to pay First Home Bank the sum of $12,000 in full payment of First Home Bank's secured claim. The remainder of First Home Bank's claim will be treated and paid as an unsecured claim.

Payment on First Home Bank's secured claim will commence on the Effective Date and will be paid over a period of 12 months at $1,000.00 per month.

First Home Bank will retain its liens on and security interest in its collateral until its secured claim is paid in full.

The Debtor shall have 10 days to cure any payment default to First Home Bank, after written notice thereof. If payment default is not timely cured, First Home Bank is entitled to exercise all of its lien rights and other seek collection of its outstanding secured claim (limited to $12,000 less payments received under the Plan) without further Order of the Bankruptcy Court.

### 3.02    Class 2 - Allowed Unsecured Claims

Holders of allowed unsecured claims shall receive a pro rata share of the Unsecured Creditor Payment (which shall total $20,000 in the aggregate) on a yearly basis for 4 years commencing on June 1, 2022 (approximately the 1 year anniversary of the Effective Date) with a payment of $5,000 and $5,000 payable on June 1, 2023, June 1 2024 and June 1, 2025, respectively (for a total of $20,000). The Debtor shall distribute the Unsecured Creditor Payment on a pro rata basis. Based upon the scheduled unsecured claims, including the deficiency claim of First Home Bank, the estimated distribution to unsecured creditors is 7-8%.

In the event that the Debtor's net disposable income shall equal or exceed $100,000 in any given Plan year, the Debtor shall increase the Unsecured Creditor Payment for such Plan year by the amount in excess of $100,000 in net disposable income.

### 3.03   Class 3 – Insider Claims

Insider Claims, if any, will not be paid under the Plan unless or until Classes 1 and 2 are paid in full.

### 3.04   Class 4 – Equity Security Holders

Equity security holders shall retain their interests in the Debtor. In addition, the principal of the Debtor will be entitled to a salary for his work on behalf of the Debtor. *See* Section 7.08 below.

## ARTICLE IV
### *History of the Debtor, Description of Assets (Liquidation Analysis) and Projected Income*

### 4.01   History of the Debtor

The Debtor is a Sub Chapter 5 small business debtor as defined in 11 U.S.C. §101(51D). The Debtor is a small tax and accounting practice in Chicago and Libertyville that specializes in accounting and tax services for small businesses.

The Debtor is owned by Ted Galatsianos and it was incorporated in 2013.

In 2018, the Debtor had $200,000 in gross revenue. In 2019, with increasing competition from online tax software businesses, the revenue of the Debtor was negatively impacted. In 2020, the pandemic shut down many small businesses – the Debtor's clientele – including restaurants, fitness centers, banquet halls. As a result, the Debtor's income precipitously declined, and the Debtor became insolvent.

The Debtor filed this case on January 1, 2021 to allow the Debtor to restructure. The Debtor's clientele is slowly returning, and the Debtor expects to improve its revenue along with improving economic conditions.

### 4.03   Assets of the Debtor/Liquidation Analysis

The Debtor has minimal assets. As of the Petition Date, the Debtor had $3,000 in its bank account, $3,680 in accounts receivable and office furniture and equipment with a value of $1,500. The value of the Debtor's general intangibles (including its domain name, phone number and good will) has a value of approximately $1,500. The total value of the Debtor's assets is $9,680. The Debtor's assets are fully encumbered by the secured lien of First Home Bank which is owed in excess of $277,000.

To confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity interest holders would receive in a Chapter 7 liquidation. As all of the assets are subject to the blanket lien of First Home Bank. Accordingly, the Debtor has no equity in any of its assets.

The value of the company rests with the owner and the continued operations of the Debtor. As a result, creditors will derive the most benefit from allowing the Debtor to restructure and generate income to satisfy the payments under the Plan.

A liquidation analysis is attached hereto as Exhibit B.

4.04    Projected Income

The Debtor must show that it will have enough cash over the life of the Plan to make the required Plan payments and operate its business.

A copy of the Debtor's 5-year projections is attached hereto as Exhibit C. The Debtor's financial projections show that the Debtor will have cumulative projected disposable income (as defined by Section 1191(d) of the Bankruptcy Code for the period described in Section 1191(c)(2) sufficient to pay the required payments under the Plan. The Debtor's financial projections show a slight net cash negative income in Year 2 of the Plan (due to additional expenses relating to the Chapter 11 proceeding), however, the Debtor will have sufficient cash on hand in in successive years to cover any shortfall. By Year 3, the Debtor anticipates that it will be cash flowing positive.

The Plan is a 5 year plan. The final Plan payment will be in approximately 2025.

4.05    Operations During Chapter 11 Proceeding

Attached as Exhibit D is a summary of the Debtor's operating reports filed in the Chapter 11 proceeding. It is difficult to compare the operations during the Chapter 11 proceeding and future projected operations given the fact that the case was filed on January 1, 2021, during the COVID-19 pandemic. Therefore, the Debtor has estimated future income based upon past operations (pre-COVID-19) and based upon current and anticipated trends in the economy with the return of small businesses.

**ARTICLE V**
*Allowance and Disallowance of Claims and Estimation of Claims*
*And Litigation Claims*

5.01    Disputed Claim. A disputed claim is a claim that has not been allowed or disallowed by a final non-appealable order and as to which either (a) a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or (b) no proof of claim has been filed and the Debtor has scheduled the claim as disputed, contingent or unliquidated.

5.02    Delay of Distribution on a Disputed Claim. No distribution shall be made on account of a disputed portion of a claim unless or until the disputed portion of the claim is allowed by a final non-appealable order. The Debtor will make distributions on the non-disputed portion of a claim, when such payments are due.

5.03    Settlement of Disputed Claims. The Debtor will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Bankruptcy Rule 9019. After confirmation of the Plan, the Reorganized Debtor may settle, compromise or otherwise resolve an objection to claim without approval of the Bankruptcy Court.

5.04    Estimation of Claims. The Debtor may, at any time, request that the Bankruptcy Court estimate any disputed claim pursuant to §502(c) of the Bankruptcy Code regardless of whether the Reorganized Debtor has previously objected to the claim. In the event that the Bankruptcy Court estimates a disputed claim, the estimated amount may constitute either the amount of the allowed claim or a maximum limitation of the claim.

5.05    Prepayment of Claims. The Reorganized Debtor reserves the right to offer prepayment of claims to creditors before the expiration of the Plan without penalty or premium. Acceptance of prepayment by creditors shall be purely voluntary. The prepayment shall be conditioned upon no affect or impairment of the Reorganized Debtor's ability to satisfy its obligations under the Plan.

5.06    Lapsed and Unclaimed Distributions.

(a)    Any distribution that has not been cleared within ninety (90) days of the date of the distribution will lapse. Lapsed distributions will revert to the Debtor.

(b)    If any distribution is returned as undeliverable, no further distributions to such creditor will be made unless the Debtor is notified in writing of the creditor's current address. Upon receipt of the notification, the Debtor will remit all missed distributions to the creditor without interest. All claims for undeliverable distributions must be made on or before the first anniversary of the Effective Date of the Plan. If any claims are not made within that time, all unclaimed distributions will revert to the Debtor. Nothing in the Plan will require the Debtor to attempt to locate any holder of an allowed claim.

5.07    Litigation Claims

The Debtor does not anticipate filing any litigation claims.

**ARTICLE VI**
*Provisions for Executory Contracts and Unexpired Leases*

6.01    Rejected Executory Contracts and Unexpired Leases. The Debtor will be conclusively deemed to have rejected all executory contracts or unexpired leases not expressly assumed under this Article 6 as of the Effective Date. A list of the assumed contracts is attached hereto as Exhibit E. The Debtor does not believe that any cure costs are owed with respect to the assumed contracts. A proof of claim arising from the rejection of an executory contract or unexpired lease under this section must be filed within 30 days following entry of the Order confirming the Plan.

## ARTICLE VII
### *General Provisions*

7.01    <u>Definitions and Rules of Construction</u>. The definitions and rules of construction set forth in §§101 and 102 of the Bankruptcy Code shall apply when terms defined or construed in the Code are used in this Plan. These definitions are supplemented by the following:

(a)    The Effective Date ("<u>Effective Date</u>") of the Plan will be the 30th day after the Order confirming the Plan is a final order.

(b)    The "Reorganized Debtor" shall refer to the Debtor as an entity created upon the entry of an order confirming the Plan.

7.02    <u>Conditions to Effective Date</u>. The following conditions precedent may affect the occurrence of the Effective Date: (1) failure to obtain confirmation; (2) modification of the Plan, which requires approval of the court; (3) the Order of Confirmation is vacated, amended, modified or stayed; or (4) the Order of Confirmation is the subject of any appeal, reconsideration or other review.

7.03    <u>Contested Plan Confirmation</u>. If the Debtor does not receive sufficient votes to confirm the Plan, pursuant to Section 1191(b), the Debtor shall seek to confirm the Plan as it does not discriminate unfairly and is fair and equitable with respect to each class of claims or interests that is impaired and have not accepted the Plan. In the event of a contested confirmation, the Debtor shall remain as the Disbursing Agent for all Plan payments.

7.04    <u>Remedies Upon Default</u>. In the event that the Debtor fails to make its Plan payments when due, creditors may seek relief from the Plan injunction to enforce the terms of the Plan or, if the case has been closed, may enforce the terms of the Plan without further relief from the Bankruptcy Court.

7.05    <u>Severability</u>. If any provision of this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

7.06    <u>Binding Effect</u>. The rights and obligations of any entity named or referred to in this Plan will be binding upon and will inure to the benefit of the successors or assigns of the entity.

7.07    <u>Captions</u>. The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

7.08    <u>Controlling Effect</u>. Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of Illinois govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

7.09    Corporate Governance.   Debtor proposes to issue one class of shares in the Reorganized Debtor – 100% owned by Ted Galatsianos. Therefore, pursuant to §1123(a)(6) of the Bankruptcy Code, the Debtor will not issue nonvoting equity securities. Each class of securities will have the power to vote in the governance of the Debtor.  No class of securities will have preference over another class with respect to dividends.

7.10    Disbursing Agent.   Ted Galatsianos will be the disbursing agent for the Debtor for the purpose of distributions and payments to be made pursuant to the Plan.  Mr. Galatsianos will continue in his role as President of the Debtor and will be entitled to receive a salary from the Debtor in the amount of $14,000 per year.  In the event that the Debtor's net disposable income increases (and the Debtor is paying all Plan payments as they become due), Mr. Galatsianos may increase his salary to an amount not greater than $150,000 per year during the Plan period.

7.11    Notice:   Any Notice of Default shall be sent to the Debtor's counsel by e-mail to mstein@gutnicki.com and David.freydin@freydinlaw.com and to the Debtor at OPS Accounting, Inc., 1590 S. Milwaukee Avenue, Suite 209, Libertyville, IL 60061, and shall be effective when sent.  Debtor may notify creditors, in writing, of any change of address for either the Debtor or counsel.

## ARTICLE VIII
### Discharge, Return of Property and Vesting of Assets

8.01    Discharge.  On the Effective Date of the Plan, the Debtor will be discharged from any debt that arose before confirmation of the Plan, subject to the occurrence of the Effective Date, to the extent specified in §1141(d)(1)(A) of the Bankruptcy Code.  However, the Debtor shall not be discharged of any debt (i) imposed by the Plan, (ii) of a kind specified in §1141(d)(6)(A) if a timely complaint was filed in accordance with Bankruptcy Rule4007(c), or of a kind specified in §1141(d)(6)(B).  After the Effective Date of the Plan, your claims against the Debtor will be limited to the debts described in clauses (i) through (iii) of the preceding sentence.

8.02    Vesting of Assets.  On the Effective Date of the Plan, Debtor's right, title and interest in and to its assets shall vest with the Reorganized Debtor.

## ARTICLE IX
### Retention of Jurisdiction

The Bankruptcy Court shall retain jurisdiction over this Chapter 11 Case for the following purposes:

10.01   Resolution of any and all objections to claims and requests to estimate claims.

10.02   Determination of all questions and disputes regarding all causes of action, controversies, disputes or conflicts, whether or not subject to pending actions as of the Effective Date between (a) the Reorganized Debtor and any other party or (b) otherwise under the Plan, the Confirmation Order or any other order issued by the Bankruptcy Court in connection with this Chapter 11 Case.

10.03   The correction of any defect and the curing of any omission or inconsistency in the Plan or the Confirmation Order as may be necessary to carry out the purposes and intent of the Plan.

10.04 Modification of the Plan after confirmation pursuant to the Bankruptcy Code and the Bankruptcy Rules.

10.05   Allowance of all claims and applications for payment of Administrative Claims and professional fees and expenses which may be paid by the Reorganized Debtor or its estate pursuant to the provisions of the Bankruptcy Code, and resolution of all disputes pertaining thereto.

10.06   Entry of a Final Order confirming substantial consummation of the Plan and closing the Chapter 11 Case.

[Remainder of Page Intentionally Left Blank]

Dated this 8th day of June 2021

Respectfully Submitted:

OPS ACCOUNTING, INC.

By: _____
      Ted Galatsianos
      Its President

By:    /s/ Miriam R. Stein_____
      Miriam R. Stein
      One of its Attorneys

Miriam R. Stein (ARDC #6238163)
Gutnicki LLP
4711 Golf Road, Suite 200
Skokie, IL 60076
(847) 745-6592
mstein@gutnicki.com

David Freydin
Law Offices of David Freydin, PC
8707 Skokie Blvd. Suite 305
Skokie, IL 60076
(847) 972-6157
David.freydin@freydinlaw.com

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| OPS ACCOUNTING, INC. | ) | Case No. 21-00001 |
| | ) | |
| Debtor. | ) | Hon. Carol A. Doyle |

## BALLOT TO ACCEPT OR REJECT DEBTOR'S PLAN OF REORGANIZATION

Debtor and Debtor in Possession OPS ACCOUNTING, INC. ("Debtor"), filed a First Amended Plan of Reorganization dated May 6, 2021 (the "Plan") in the above captioned bankruptcy proceeding.

**You should review the Plan before you vote. You may wish to seek legal advice concerning the Plan and your classification and treatment under the Plan. If you hold claims in more than one class, you should file a ballot for each class in which you are entitled to vote.**

**If your ballot is not received by the Clerk of the United States Bankruptcy Court, 219 S. Dearborn Street, Chicago, IL 60604 on or before <u>June 3, 2021</u> (and such deadline is not extended), your vote will not count as either an acceptance or rejection of the Plan.**

**If the Plan is confirmed by the Court it will be binding on you whether or not you vote.**

### ACCEPTANCE OR REJECTION OF THE PLAN

The undersigned, a creditor of the Debtor in Class _____ and in the amount of _____:

Check One Only:      _____ Accepts the Plan        _____ Rejects the Plan

Dated: _____      Creditor Name: _____
                      Signature: _____
                      Printed Name of Signatory: _____
                      Title _____
                      Address: _____
                      _____

**RETURN THIS BALLOT TO:**
**Clerk of the U.S. Bankruptcy Court**
**219 S. Dearborn Street, Chicago, IL 60604**
**www.ilnb.uscourts.gov**

{1452/001/00452819.2}

## Ops Accounting, Inc.
## Liquidation Analysis
## Exhibit B

| | |
|---|---|
| Assets | |
| Chase Checking | $3,000.00 |
| Accounts Receivable | $3,680.00 |
| Office Equipment/Furniture | $1,500.00 |
| Website | $500.00 |
| Intangibles (goodwill) | $1,500.00 |
| **Total Assets** | **$10,180.00** |
| First Home Bank Secured Claim | $227,988.00 |
| **Total Equity** | **-$217,808.00** |

**Ops Accounting, Inc.**
**Profit and Loss**
**Forecast**
**Exhibit C**

| | 2021 | 2022 | 2023 | 2024 | 2025 | Totals |
|---|---|---|---|---|---|---|
| **Income** | | | | | | |
| Services | 55,380.00 | 55,380.00 | 55,380.00 | 55,380.00 | 55,380.00 | 276,900.00 |
| New Business | 10,000.00 | 15,000.00 | 15,000.00 | 15,000.00 | 20,000.00 | 75,000.00 |
| Tax Season | 15,000.00 | 15,000.00 | 15,000.00 | 15,000.00 | 15,000.00 | 75,000.00 |
| **Total Income** | $ 80,380.00 | $ 85,380.00 | $ 85,380.00 | $ 85,380.00 | $ 90,380.00 | 426,900.00 |
| **Cost of Goods Sold** | | | | | | |
| Annual Reports | 1,646.50 | 1,850.00 | 2,000.00 | 2,150.00 | 2,300.00 | 9,946.50 |
| Cloud Software | 2,516.92 | 2,516.92 | 2,516.92 | 2,516.92 | 2,516.92 | 12,584.60 |
| Merchant Fees | 4,792.52 | 4,792.52 | 4,792.52 | 4,792.52 | 4,792.52 | 23,962.60 |
| Service Bureau | 1,027.60 | 1,100.00 | 1,250.00 | 1,400.00 | 1,550.00 | 6,327.60 |
| Subcontractors | 5,115.70 | 5,400.00 | 5,750.00 | 6,000.00 | 6,500.00 | 28,765.70 |
| **Total Cost of Goods Sold** | $ 15,099.24 | $ 15,659.44 | $ 16,309.44 | $ 16,859.44 | $ 17,659.44 | 81,587.00 |
| **Gross Profit** | $ 65,280.76 | $ 69,720.56 | $ 69,070.56 | $ 68,520.56 | $ 72,720.56 | 345,313.00 |
| **Expenses** | | | | | | |
| Advertising | 985.93 | 1,200.00 | 1,350.00 | 1,500.00 | 1,650.00 | 6,685.93 |
| Auto Expense | 87.11 | 100.00 | 130.00 | 200.00 | 250.00 | 767.11 |
| Bank Service Fees | 187.00 | 187.00 | 187.00 | 187.00 | 187.00 | 935.00 |
| Client Development | 0.00 | 150.00 | 150.00 | 150.00 | 150.00 | 600.00 |
| Computer Supplies | 95.61 | 95.61 | 95.61 | 95.61 | 95.61 | 478.05 |
| Continuing Education | 809.73 | 1,000.00 | 1,200.00 | 1,350.00 | 1,500.00 | 5,859.73 |
| Dues & Subscriptions | 9,645.79 | 10,100.00 | 10,500.00 | 11,000.00 | 12,000.00 | 53,245.79 |
| Education & Seminars | 658.95 | 658.95 | 658.95 | 658.95 | 658.95 | 3,294.75 |
| Insurance | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 2,500.00 |
| Interest | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | - |
| Internet & Hosting | 4,245.01 | 4,245.01 | 4,245.01 | 4,245.01 | 4,245.01 | 21,225.05 |
| Licenses & Permits | 35.95 | 35.95 | 35.95 | 35.95 | 35.95 | 179.75 |
| Office Supplies | 5,224.94 | 5,224.94 | 5,224.94 | 5,224.94 | 5,224.94 | 26,124.70 |
| Payroll Services | 261.00 | 261.00 | 261.00 | 261.00 | 261.00 | 1,305.00 |
| Postage & Delivery | 131.95 | 200.00 | 250.00 | 300.00 | 350.00 | 1,231.95 |
| Refunds | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | - |
| Reimbursed expenses | 511.76 | 511.76 | 511.76 | 511.76 | 511.76 | 2,558.80 |
| Rent | 6,000.00 | 7,000.00 | 7,500.00 | 8,000.00 | 8,000.00 | 36,500.00 |
| Salaries & Wages | 15,000.00 | 15,000.00 | 20,000.00 | 20,000.00 | 20,000.00 | 90,000.00 |
| Tax Software | 5,163.09 | 5,163.09 | 5,163.09 | 5,163.09 | 5,163.09 | 25,815.45 |
| Telephone | 2,224.07 | 2,224.07 | 2,224.07 | 2,224.07 | 2,224.07 | 11,120.35 |
| Travel & Transportation | 204.74 | 250.00 | 300.00 | 350.00 | 400.00 | 1,504.74 |
| Utilities | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 1,500.00 |
| Misc. Expenses | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 1,000.00 |
| **Total Expenses** | $ 52,472.63 | $ 54,607.38 | $ 60,987.38 | $ 62,457.38 | $ 63,907.38 | 294,432.15 |
| **Net Operating Income** | $ 12,808.13 | $ 15,113.18 | $ 8,083.18 | $ 6,063.18 | $ 8,813.18 | 50,880.85 |
| | | | | | | |
| **Plan Payments** | | | | | | |
| Administrative Claims | 6,000.00 | 6,000.00 | | | | 12,000.00 |
| First Home Bank | 6,000.00 | 6,000.00 | | | | 12,000.00 |
| General Unsecured | | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 | 20,000.00 |
| **Total Plan Payments** | 12,000.00 | 17,000.00 | 5,000.00 | 5,000.00 | 5,000.00 | 44,000.00 |
| | | | | | | |
| **Net Income** | 808.13 | -1,886.82 | 3,083.18 | 1,063.18 | 3,813.18 | 6,880.85 |

**Ops Accounting, Inc.**
**Summary of Operating Reports**
**Exhibit D**

|  | Beginning Cash | Income | Expenses | Ending Cash |
|---|---|---|---|---|
| Jan-21 | $1,342.98 | $13,855.00 | -$10,882.40 | $4,315.58 |
| Feb-21 | $4,315.58 | $5,720.00 | -$6,832.10 | $3,203.48 |
| Mar-21 | $3,203.48 | $13,439.50 | -$11,078.96 | $5,564.02 |

**Fill in this information to identify the case:**

Debtor name      **OPS Accounting, Inc.**

United States Bankruptcy Court for the:    NORTHERN DISTRICT OF ILLINOIS

Case number (if known) _____

☐ Check if this is an
amended filing

## Official Form 206G
## Schedule G: Executory Contracts and Unexpired Leases                    **12/15**

Be as complete and accurate as possible. If more space is needed, copy and attach the additional page, number the entries consecutively.

1.   **Does the debtor have any executory contracts or unexpired leases?**
    ☐ No. Check this box and file this form with the debtor's other schedules.  There is nothing else to report on this form.
    ■ Yes. Fill in all of the information below even if the contacts of leases are listed on *Schedule A/B: Assets - Real and Personal      Property*
(Official Form 206A/B).

| **2. List all contracts and unexpired leases** | | **State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease** |
|---|---|---|
| 2.1. | State what the contract or lease is for and the nature of the debtor's interest | **Lease for debtor's premises in Libertyville** | |
| | State the term remaining | **11 months** | **Focuse Commercial Property Mngmnt**<br>**1590 S Milwaukee Ave** |
| | List the contract number of any government contract | | **Suite 215**<br>**Vernon Hills, IL 60061** |
| 2.2. | State what the contract or lease is for and the nature of the debtor's interest | **Lease for virtual office at 10 S Riverside Plaza, Suite 875, Chicago, IL 60606** | |
| | State the term remaining | **11 months** | |
| | List the contract number of any government contract | | **Regus Management Group LLC**<br>**10 S Riverside PLaza**<br>**Chicago, IL 60606** |

Software Copyright (c) 1996-2020 Best Case, LLC - www.bestcase.com                    Best Case Bankruptcy